UNITED STATES of America, Appellee,

v.

John L. TRACY, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

John L. TRACY, Defendant, Appellant.

UNITED STATES of America, Appellant,

v.

John L. TRACY, Defendant, Appellee.

Nos. 92–1459, 92–1461 and 92–1554.

United States Court of Appeals,
First Circuit.

Heard Jan. 5, 1993.

Decided March 29, 1993.

Certiorari Denied May 17, 1993.

See 113 S.Ct. 2393.

J. Michael McGuinness, by Appointment of the Court, with whom McGuinness & Parlagreco and John L. Tracy, pro se, were on brief for defendant.

F. Mark Terison, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., was on brief for U.S.

Before CYR, Circuit Judge, CAMPBELL, Senior Circuit Judge, and BOUDIN, Circuit Judge.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Defendant/appellant, John L. Tracy, was convicted in the United States District Court for the District of Maine of three counts of distribution and attempted distribution of lysergic acid diethylamide ("LSD") in violation of 21 U.S.C. § 841(a)(1) and § 846. Tracy also separately pled guilty to one count of failure to appear as ordered by the court, 18 U.S.C. § 3146(a)(1). Tracy was sentenced to 97 months on the distribution counts and a 24-month consecutive sentence on the failure to appear count. In a scattershot approach, Tracy raises a plethora of arguments challenging his conviction and the resulting sentence. Pursuant to 18 U.S.C. § 3742(b), the government appeals from the district court's refusal to enhance Tracy's sentence for obstruction of justice under U.S.S.G. § 3C1.1. We affirm Tracy's conviction, but vacate and remand for the district court to reconsider whether an enhancement of his sentence is warranted under § 3C1.1.

## I.

Tracy was initially indicted in the District of Maine, in an indictment that was un-

sealed on October 4, 1990, for distribution of LSD in July 1989 and August 1990. On January 15, 1991, the district court empaneled a jury. However, the trial was continued on January 28, 1991, prior to the swearing of the jury, when Tracy's attorney became aware of a conflict involving a potential defense witness. One of the government's witness statements included the name of a present client of Tracy's attorney. Because of the potential conflict between the two clients, the court granted defense counsel's motion to withdraw. The court also granted Tracy a continuance of two weeks to decide whether to hire new private counsel or to accept a court-appointed lawyer. The court reminded Tracy that his speedy trial rights were waived during the period of continuance. On February 6, 1991, Tracy requested court-appointed counsel.

A superseding indictment, which changed the date of one of the LSD sales, was filed on February 26, 1991. Tracy's case was placed on the trial calendar for March 25. However, on March 12, Tracy moved for a continuance because he had not yet met with his new attorney. The court granted the continuance and later rescheduled the trial to begin on May 20, 1991.

A second superseding indictment, which added a new count charging Tracy with attempted sale of LSD on August 22, 1990, was returned in five counts on April 24, 1991. Another jury was empaneled on May 20, but it was not sworn. On the day the trial was to begin, Tracy's attorney asked for another continuance because Tracy had broken his leg and wanted a new attorney. After determining that the lawyer-client relationship had disintegrated, the court granted the attorney's motion to withdraw and the motion for a continuance. The court again explained to Tracy that his motion for a continuance stopped the speedy trial clock.

Tracy's trial was rescheduled for August 14, 1991. Tracy, however, failed to report

by telephone to his pretrial services officer on August 12, and failed to appear for trial on August 14. When Tracy was arrested in Florida on August 28, he was carrying false identification and pretended to be someone else. Authorities returned Tracy to the District of Maine, and the district court rescheduled his trial. On September 17, the grand jury issued an additional single count indictment against Tracy charging him with failure to appear for trial.

Trial began in the LSD case on October 15, 1991.[1] At the outset, the court instructed the jury to consider the five alleged offenses separately. The government's case was based primarily on the testimony of undercover agents and informants, as well as several tape recorded conversations with Tracy. The testimony and recordings revealed that on August 18, 1990, a cooperating individual named Russell Wright purchased 20 doses of LSD from Tracy at his cabin for $80. On August 20, Wright returned to Tracy's cabin and purchased 50 doses of LSD from Tracy for $150. The LSD purchased on both August 18 and 20 was on yellow blotter paper with black airplanes.

On August 22, Wright attempted a third purchase of LSD from Tracy at his cabin. Several agents from Maine's Bureau of Intergovernmental Drug Enforcement ("BIDE") testified that the purpose of this attempt was to flush out the source of Tracy's LSD by requesting a high enough number of doses that Tracy would not have them on hand. Wright therefore requested 200 doses. When Tracy replied that he had only 100, a BIDE agent instructed Wright not to complete the purchase. Wright, however, testified that he did get a look at the LSD and noticed that it was on the same yellow blotter paper with black airplanes.

Another cooperating informant, Curtis Elwell, testified about Tracy's alleged offenses in 1989. Elwell testified that Tracy supplied him with LSD, which Elwell in turn sold to a confidential informant on two occasions in July 1989. Elwell admitted

---

1. ´A judge different from those who had previously handled Tracy's case took over on the day    that the trial began.

that he was arrested for these sales and that his sentence was reduced from 60 months to 42 months for his cooperation with the government. The court did not allow Tracy to impeach Elwell with a fourteen-year-old drug conviction.

The government closed its case with evidence concerning Tracy's flight to Florida. This was offered to show consciousness of guilt. Over Tracy's objection, Eric Thompson, a United States Deputy Marshal from Florida, testified to Tracy's attempt to conceal his identity at the time of his arrest in Florida. At the conclusion of Thompson's testimony, the government rested. Tracy did not then move for acquittal.

Tracy took the stand in his own defense. He testified to his drug use, to the availability of drugs during his youth, and to the availability of LSD among Grateful Dead followers. Contrary to a tape recording of his conversation with Wright in which Tracy purportedly said that he had to "make something" for his LSD dealing, Tracy testified that he "was willing to just get [his] money back." Tracy further testified that he and his family were afraid of Wright because he seemed aggressive. According to Tracy and his step-daughter, who also testified, the family decided to sell Wright artificial LSD if he returned, in an apparent belief that Wright would then leave them alone. Tracy testified that on August 22, 1990, the LSD that he attempted to sell to Wright was fake and was on blue blotter paper. Tracy made no motion for acquittal after resting his case.

After the close of the evidence, the court again instructed the jury to consider each alleged offense separately. Thereafter, the jury found Tracy guilty of the three August 1990 LSD offenses, but acquitted him on the two July 1989 charges.

Following the above convictions, but before sentencing, Tracy, on November 7, 1991, entered a plea of guilty to the separate charge of failure to appear.

## II.

### A. *Pretrial and Trial Issues*

#### 1. *Joinder of Counts*

■ Tracy contends that the district court abused its discretion when it refused to order separate trials for the 1989 and 1990 LSD distribution charges. Rule 14 of the Federal Rules of Criminal Procedure, which governs motions to sever, provides in relevant part the following: "If it appears that a defendant ... is prejudiced by a joinder of offenses ... the court may order an election or separate trials of counts, ... or provide whatever other relief justice requires." A district court's denial of a motion for relief from prejudicial joinder brought pursuant to Fed.R.Crim.P. 14 is reviewed only for abuse of discretion. *E.g., United States v. Chambers*, 964 F.2d 1250, 1251 (1st Cir.1992). Such a denial will not be reversed unless the challenger makes "a strong showing of prejudice." *United States v. Gray*, 958 F.2d 9, 14 (1st Cir.1992) (quoting *United States v. Font–Ramirez*, 944 F.2d 42, 45 (1st Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 954, 117 L.Ed.2d 122 (1992)).

Tracy contends that he was prejudiced in two ways. First, Tracy maintains that he was put in the untenable position of wishing to testify on the 1989 offenses while wanting to remain silent on the 1990 offenses. *See United States v. Bronco*, 597 F.2d 1300, 1302–03 (9th Cir.1979). However, as the magistrate noted in recommending denial of the motion to sever below, Tracy's allegations of prejudice were conclusory; they did not show with any particularity the nature of the claimed prejudice. To make the requisite strong showing of prejudice, a defendant must "present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying." *Baker v. United States*, 401 F.2d 958, 977 (D.C.Cir.1968); *Bronco*, 597 F.2d at 1303 ("[a]n accused should show the specific testimony he will present about one offense, and his specific reasons for not testifying about others, to

justify severance."). Because Tracy's claims of prejudice were conclusory, the district court had no factual basis on which to determine whether Tracy's claim of prejudice was genuine. Tracy's claims of prejudice on appeal remain no more concrete than formerly.[2]

■Second, Tracy suggests that he was prejudiced when evidence of both the 1989 and 1990 distributions was heard by the jury. As a result, Tracy claims, the government was able to "bootstrap" the credibility of Curtis Elwell. The jury, however, acquitted Tracy of the counts dependent on Elwell's testimony. Thus, Tracy's defense to the 1989 distributions was not prejudiced by any bolstering of Elwell's credibility.

The district court carefully instructed the jury at both the beginning and end of the case that it must consider each charge separately and make a separate determination on each count without regard to the others. *See, e.g., Chambers,* 964 F.2d at 1251; *Gray,* 958 F.2d at 15. By repeatedly instructing the jury to consider each charge separately, the district court "minimized any possible prejudice" from the joinder of offenses. *United States v. Natanel,* 938 F.2d 302, 308 (1st Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 986, 117 L.Ed.2d 148 (1992). The jury, apparently taking heed of the district court's clear instructions, acquitted Tracy of the charged 1989 LSD distributions and convicted him on the 1990 distributions. *See Natanel,* 938 F.2d at 308; *United States v. Tashjian,* 660 F.2d 829, 834 (1st Cir.), *cert. denied sub nom. Campbell v. United States,* 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981). The jury's selectivity in its verdicts affords "reasonably good assurance" that spillover prejudice did not result from joinder of offenses. *See Natanel,* 938 F.2d at 308.

The district court did not abuse its discretion in denying Tracy's motion to sever.

**2.** ***Prosecutorial Misconduct***

■ Tracy next contends that the district court should have dismissed the indictment in January 1991, when the government revealed its intent to call a witness who was also a client of Tracy's then-attorney, thereby forcing his attorney to withdraw. Because the government did not call the witness when the case eventually went to trial, Tracy asserts prosecutorial misconduct.

As the government points out, the record refutes the factual basis for Tracy's contention. Tracy's original attorney withdrew because she learned that another client was a potential witness for the defense, not for the government. The week before Tracy's originally scheduled January trial date, the government had disclosed the recorded statements of its witnesses, including the grand jury testimony of Detective Ron Gastia. Detective Gastia had mentioned the name of a confidential informant who was also a client of Tracy's attorney. Believing the informant was a potential witness for Tracy, but that such a role would be against the informant's interest, Tracy's attorney discerned a conflict and withdrew. Nothing in the record indicates that the government was aware of the relationship between Tracy's attorney and the confidential informant, or that the government acted in any way but responsibly in disclosing Detective Gastia's grand jury testimony. The district court's denial of Tracy's motion to dismiss was not an abuse of discretion.

**3.** ***Evidentiary Rulings***

**a.** ***Evidence of Fear***

■ Tracy argues that the district court erred in admitting evidence of Wright's fear of Tracy. Tracy contends that this testimony was irrelevant and unduly prejudicial under Rule 403 of the Federal Rules of Evidence. Because Tracy did not object to this testimony at trial, our review is for

---

**2.** At oral argument before this court, Tracy's counsel suggested for the first time that Tracy was prejudiced by the admission of prior convictions to impeach his credibility. As this argument was not presented below nor mentioned in Tracy's brief, it was waived. *See, e.g., United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

plain error only. *See, e.g., United States v. Arboleda,* 929 F.2d 858, 870 (1st Cir.1991). Under this standard, we will reverse a conviction only if an error affects the "fundamental fairness of the trial." *E.g., United States v. Vest,* 842 F.2d 1319, 1326 n. 4 (1st Cir.), *cert. denied,* 488 U.S. 965, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988).

Tracy cannot meet this high standard. Wright said only a few words about his concerns for his safety while cooperating with the government. Such evidence of fear in the context of drug deals is not unusual as the drug trade is not a safe business. In fact, both Tracy and his stepdaughter testified of their own fear of Wright. Admission of Wright's concerns for his safety plainly did not undermine the "fundamental fairness of the trial."

### b. *Drug Culture*

█ Tracy contends that the district court erred in refusing to allow him to testify about the effects LSD had on him. According to Tracy, the testimony would be relevant to show that he was a user, and not a dealer of LSD. We will reverse a trial court's Rule 403 relevance determinations only for an abuse of discretion. *E.g., United States v. Rodriguez Cortes,* 949 F.2d 532, 540–41 (1st Cir.1991); *United States v. Green,* 887 F.2d 25, 27 (1st Cir. 1989).

The district court's Rule 403 ruling was clearly not an abuse of discretion. We fail to see how testimony of the physical and psychological effects of LSD on Tracy was relevant to whether Tracy was or was not a dealer of LSD. Even accepting the dubious argument that being a user cuts against being a dealer, ample evidence of use went in. The court let Tracy testify that today's LSD just made him giggly and did not produce hallucinations. He spoke of his drug use, the availability and widespread use of drugs during his youth, the availability of LSD among followers of the rock group Grateful Dead, and the nonprofit sharing of drugs among the "rainbow

community" to which Tracy apparently belonged. The jury could have had few illusions.

### c. *Evidence of Flight*

█ Tracy contends that the district ·court erred in admitting, to show consciousness of guilt, evidence of his flight to Florida and of his attempt to conceal his identity when he was arrested there. According to Tracy, this evidence was irrelevant and grossly prejudicial, and should have been excluded under Rules 401 and 403 of the Federal Rules of Evidence. Contrary to Tracy's assertions, evidence of a defendant's flight and attempts to conceal or falsify identity may be presented at trial as probative of a "guilty mind" if "there is an adequate factual predicate creating an inference of guilt of the crime charged." *United States v. Camilo Montoya,* 917 F.2d 680, 683 (1st Cir.1990) (quoting *United States v. Hernandez–Bermudez,* 857 F.2d 50, 52 (1st Cir.1988)); *United States v. Grandmont,* 680 F.2d 867, 869 (1st Cir. 1982). In the present case, before the deputy marshal from Florida testified, the government established that Tracy had been scheduled for trial in August 1991 and had failed to appear. Other independent evidence established his drug dealings. There was a sufficient factual predicate to justify the admission of the flight and concealment evidence and no abuse of discretion for the court to admit it.

### 4. *Pro Se Motions*

█ Tracy contends that the district court erred in refusing to consider several *pro se* motions which were unsigned and which were filed in March and April, 1992, when Tracy was represented by counsel. A district court enjoys wide latitude in managing its docket and can require represented parties to present motions through counsel. The district court did not abuse its discretion in refusing to consider Tracy's unsigned, *pro se* motions.[3]

---

**3.** Tracy also suggests that his convictions must be reversed because of the cumulative prejudicial effect of district court errors. Because we

find that the district court did not err, we reject this argument.

### 5. Waiver

■ Tracy raises a host of other conclusory contentions for which Tracy has provided virtually no argument and no citation to authorities. Included among these bare allegations are Tracy's "arguments" that the January and May 1991 jury empanelments subjected him to double jeopardy; that his speedy trial rights were violated; that the district court erred in refusing to allow him to impeach Curtis Elwell with a fourteen-year-old conviction; that his due process rights were violated because Elwell received a reduction in sentence for cooperating with the government; and that there was insufficient evidence to support the jury's guilty verdicts.

■ It is well settled that issues are deemed waived when "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990); *United States v. Bell*, 936 F.2d 337, 343 (7th Cir.1991). Notice pleadings do not suffice for appellate briefs. *See* Fed.R.App.P. 28(a)(5) (appellant's argument shall "contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on."). Because Tracy has completely failed to develop the arguments mentioned above, they are deemed waived. Nevertheless, we have examined all of Tracy's abandoned arguments and are independently satisfied that they are without merit.

### B. Sentencing

#### 1. Amount of LSD

■ Tracy disputes the computation of the amount of LSD involved in the attempted sale on August 22, 1990. The district court assigned a weight to the LSD offered but not sold on August 22 by extrapolating from the weight of the LSD Tracy actually sold to Russell Wright on the two prior occasions. The first sale on August 18 involved 20 doses, which weighed a total of .11 grams (.0055 grams per dose). The second sale on August 20 involved 50 doses, which weighed a total of .32 grams (.0064 grams per unit). Based on this information, the court determined an average weight of .00595 grams per dose. The court then calculated a weight of .595 grams for the 100 doses involved in the third attempted sale. This calculation produced a total weight for all three offenses of 1.025 grams (.110 + .320 + .595), and a base offense level of 26. Combined with Tracy's criminal history category III, the calculation yielded a guideline range of 78 to 97 months.

■ Tracy contends that the district court erred as a matter of law by failing to apply the Typical Weight Per Unit Table found at application note 11 of the commentary to U.S.S.G. § 2D1.1.[4] That table indicates that the typical weight per unit for LSD is .05 milligrams (.00005 grams). Applying this table, the total weight for all three offenses would have been .435 grams (.110 + .320 + .005). This computation would produce an offense level of 20, rather than 26, and a guideline range of 41 to 51 months.[5]

---

**4.** Tracy also contends that the district court's calculation violates the due process clause of the Fifth Amendment, which provides a defendant with the right to be sentenced in accordance with accurate evidence. *See Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). As discussed below, we find the district court's extrapolation from the previous two sales to provide a more accurate estimate of the amount of LSD involved in the third attempted sale than would the use of the Typical Weight Per Unit Table. We therefore reject Tracy's due process argument.

**5.** As an alternative, Tracy suggests that the district court should at least have used the lightest

known sample to extrapolate the weight of the LSD in the third attempted sale. *See United States v. Martz*, 964 F.2d 787, 790 (8th Cir.), (approving district court's use of lightest known sample), *cert. denied*, —— U.S. ——, 113 S.Ct. 823, 121 L.Ed.2d 694 (1992); *United States v. Bishop*, 894 F.2d 981, 987 (8th Cir.), *cert. denied*, 498 U.S. 836, 111 S.Ct. 106, 112 L.Ed.2d 77 (1990) (same). Applying that method, the total weight for all three offenses would have been .980 grams (.110 + .320 + .550). The base offense level would then be 24, and the guideline range would be 63 to 78 months.

We have said in the past that " 'when choosing between a number of plausible estimates of

Application note 11 of U.S.S.G. § 2D1.1 instructs courts to use its Typical Weight Per Unit Table when the number of doses, pills or capsules are known, but the weight of the controlled substance is not known. The table displays the typical weight per dose, pill or capsule for certain controlled substances, including LSD. Application note 11, however, specifically cautions courts not to use the table if a more reliable estimate of the weight is available:

> The Typical Weight Per Unit Table, prepared from information provided by the Drug Enforcement Administration, displays the typical weight per dose, pill, or capsule for certain substances. *Do not use this table if any more reliable estimate of the total weight is available from case-specific information.*

(emphasis added). Application note 11 further warns that the table provides a very conservative estimate of weight for certain substances, including LSD, because the weights displayed in the table do not include the weight of the mixture or substance containing the drugs:

> * For controlled substances marked with an asterisk, the weight per unit shown is the weight of the actual controlled substance, and not generally the weight of the mixture or substance containing the controlled substance. Therefore, use of this table provides a very conservative estimate of the total weight.

LSD is marked with an asterisk.

■ A district court's finding of the amount of drugs involved in an offense will be overturned on appeal only upon a showing of clear error. *E.g., United States v. McCarthy*, 961 F.2d 972, 978 (1st Cir.1992); *United States v. Zuleta–Alvarez*, 922 F.2d 33, 37 (1st Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2039, 114 L.Ed.2d 123

drug quantity . . . a court must err on the side of caution.'" *United States v. Sklar*, 920 F.2d 107, 113 (1st Cir.1990) (quoting *United States v. Walton*, 908 F.2d 1289, 1301 (6th Cir.), *cert. denied,* 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990)). Here, Tracy sold more than twice as many doses of LSD at the higher weight (.0064 grams) than at the lower weight (.0055 grams). Thus, the district court did err on the side of caution because, had the district court accounted for the greater number of doses sold at the

(1991). In the present case, the district court did not err in refusing to apply the Typical Weight Per Unit Table. The district court's finding of the quantity of LSD involved in the third attempted sale was based on the weight of the actual doses (on the same yellow paper with black airplanes), that Tracy had sold just days before the third attempted sale. Where this "case-specific information" was available, the court was warranted under note 11 in using the former in preference to the Typical Weight Per Unit Table. *See* U.S.S.G. § 2D1.1, application note 11; *United States v. Bishop*, 894 F.2d 981, 987 (8th Cir.), *cert. denied*, 498 U.S. 836, 111 S.Ct. 106, 112 L.Ed.2d 77 (1990). The table produces conservative estimates that, among other things, do not account for the weight of the "mixture or substance" containing the LSD. As the weight of LSD blotter paper is considered a "mixture or substance" that should be included in calculating the amount of LSD for sentencing, *Chapman v. United States*, — U.S. ——, ——, 111 S.Ct. 1919, 1925, 114 L.Ed.2d 524 (1991), the district court properly employed the higher average weight extrapolated from the two prior sales of LSD-infused yellow blotter paper, rather than the more conservative estimate derived from the Typical Weight Per Unit Table. *See United States v. Shabazz*, 933 F.2d 1029, 1034 (D.C.Cir.) (Thomas, J.) ("note 11 was designed to address problems of uncertainty, not to undermine the preference that sentences be determined according to the weight of the mixture or substance if possible."), *cert. denied sub nom. McNeil v. United States*, — U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991).

### 2. *Acceptance of Responsibility*

■ Tracy argues that the district court clearly erred in refusing to adjust his

higher weight, the average weight per dose would have equaled .0061 grams ( [.11 + .32] divided by 70). Given these facts, we think the district court's averaging method was conservative and that it could permissibly conclude in all the circumstances of this case that this method produced a more reliable estimate of the amount of LSD involved in the third attempted sale than would extrapolating from the lightest known sample.

base offense level on the failure to appear count for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. According to Tracy, he has been open and remorseful with the court since the inception of that charge. He notes that he confessed his failure to appear when he was first brought back from Florida, and that he eventually pled guilty to that charge. He quotes a letter that he sent to the district court, which stated "I have clearly made it known that I accept responsibility for [failing to appear] and truly regret making that decision. At that time I was worried about the child that I thought my wife was carrying, and was a very confused and scared man. But I regret my actions and have apologized to this court for them."

■ A defendant is entitled to a two-level downward adjustment for acceptance of responsibility if the defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). Although a guilty plea is "significant evidence" of acceptance of responsibility, it does not, by itself, compel a downward adjustment, since "this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1, application note 3, *United States v. Pavao*, 948 F.2d 74, 79 (1st Cir.1991). A sentencing judge's determination concerning acceptance of responsibility will be overturned only if clearly erroneous. *E.g., United States v. Royer*, 895 F.2d 28, 29 (1st Cir.1990).

The district court's determination that Tracy did not genuinely accept responsibility for his failure to appear is amply supported by the record. Tracy used false identification in an attempt to conceal his identity even after Florida authorities confronted him. *See United States v. Yeo*, 936 F.2d 628, 629 (1st Cir.1991) (use of false name supported denial of downward adjustment for acceptance of responsibili-

ty). Further, after observing Tracy's demeanor, the district court concluded that he was opportunistic and would say anything to minimize his sentence. Under these circumstances, we cannot say that the district court clearly erred in refusing to adjust Tracy's base offense level for acceptance of responsibility.

### 3. Obstruction of Justice

■ Pursuant to 18 U.S.C. § 3742(b), the government appeals from the district court's refusal to enhance Tracy's sentence for obstruction of justice under U.S.S.G. § 3C1.1. The government argues that Tracy knowingly perjured himself when testifying about the August 22, 1990 attempted sale,[6] and that, therefore, an enhancement for obstruction of justice was mandatory.

U.S.S.G. § 3C1.1 provides the following:

If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

Application note 3(b) specifically identifies the commission of perjury as the kind of conduct to which this enhancement applies. U.S.S.G. § 3C1.1, application note 3(b).

The Supreme Court has recently provided guidance on the application of U.S.S.G. § 3C1.1 to perjured testimony. *See United States v. Dunnigan*, —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). In *Dunnigan*, the Supreme Court ruled that once a district court finds that a defendant has committed perjury, the court must enhance the defendant's base offense level by two points for obstruction of justice. *Id.* at ——, 113 S.Ct. at 1118; *see United States v. Austin*, 948 F.2d 783, 788–89 (1st Cir. 1991). In determining what constitutes perjury, the Court told sentencing courts to

---

6. The alleged perjury consisted of Tracy's testimony that the third attempted sale involved artificial LSD on blue blotter paper. This testimony was directly contrary to Wright's testimony that he saw the 100 doses of LSD that Tracy attempted to sell on August 22, and these doses were on the same yellow blotter paper with black airplanes that Tracy had sold on the two prior occasions.

apply the generally accepted definition of perjury in the federal criminal perjury statute, 18 U.S.C. § 1621.[7] —— U.S. at —— ——, 113 S.Ct. at 1115–18. Under that definition, a witness testifying under oath or affirmation commits perjury if he or she "gives *false* testimony concerning a *material matter* with the *willful intent* to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *Id.* at ——, 113 S.Ct. at 1116 (emphasis added).

The Court in *Dunnigan* stressed that, in order to impose a § 3C1.1 enhancement, a sentencing court "must make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition,"—i.e., the sentencing court "must make findings to support all the elements of a perjury violation in the specific case." *Id.* The Court further preferred that sentencing courts "address each element of the alleged perjury in a separate and clear finding." *Id.* Such express findings, according to the Court, help to ensure that sentences will not be enhanced "as a matter of course whenever the accused takes the stand and is found guilty." *Id.*[8]

In refusing to apply the enhancement for obstruction of justice in the present case, the district court said,

[It] is a very close call. It is apparent to the Court that the jury rejected the credibility of this defendant and of his testimony at trial. This Court was present at that time and heard that testimony. This Court, too, disbelieved the accuracy of his testimony.

Nevertheless, there are many policy considerations that surround the question of enhancing a base offense level which increases potential punishment on the basis of the Court's conclusion that perjury has been committed. And the Court simply is not comfortable in its own mind in concluding that the conduct amounts to perjury of sufficient significance to justify such an enhancement.

The government contends that as the district court, in the above-quoted passage, found that Tracy committed perjury, the two-level enhancement for obstruction of justice was mandated. Quoting the very same passage, Tracy contends that the district court did not find perjury, and more particularly that the district court did not make a specific finding that Tracy had willfully lied.

We agree with Tracy that it is not clear from the district court's discussion of obstruction of justice whether the court found that all the elements of perjury were satisfied. While the district court expressly stated that it "disbelieved the accuracy

7. 18 U.S.C. § 1621 provides in relevant part the following:

Whoever—
(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true ...
is guilty of perjury....
18 U.S.C. § 1621(1).

8. The Supreme Court in *Dunnigan* also emphatically rejected, as has virtually every circuit court, the argument that an enhanced sentence for perjury undermines a defendant's right to testify. —— U.S. at ——, 113 S.Ct. at 1117; *United States v. Batista–Polanco,* 927 F.2d 14, 22

(1st Cir.1991); *United States v. Matos,* 907 F.2d 274, 276 (2d Cir.1990); *United States v. Wallace,* 904 F.2d 603, 604–05 (11th Cir.1990). "[A] defendant's right to testify does not include a right to commit perjury." *Dunnigan,* —— U.S. at ——, 113 S.Ct. at 1117. We reject Tracy's argument to the contrary.

We also find no merit in the related contention that Tracy's denial of guilt under oath at trial cannot be the basis of an enhancement under U.S.S.G. § 3C1.1. While application note 1 to § 3C1.1 does provide that a defendant's denial of guilt is not a basis for an enhancement, the note expressly excludes from this prohibition "a denial of guilt under oath that constitutes perjury." U.S.S.G. § 3C1.1, application note 1. As we have stated in the past, " 'the authorized procedure for asserting innocence in a criminal proceeding is the tender of an unsworn 'not guilty' plea.' " *United States v. Brum,* 948 F.2d 817, 820 (1st Cir.1991) (quoting *Batista–Polanco,* 927 F.2d at 22).

of [Tracy's] testimony," we are unable to determine whether the court also found that the testimony concerned a material matter, or that Tracy intentionally provided the false testimony.[9] It is also possible to interpret the district court's statements as finding perjury, but requiring something more than basic perjury to justify an enhancement for obstruction of justice.

We think the proper resolution, in these circumstances, is to vacate the sentence and remand to the district court "to make findings to support all the elements of a perjury violation," or to articulate clearly the elements it believes have not been satisfied. *See Dunnigan*, —— U.S. at ——, 113 S.Ct. at 1118. In making this determination, the district court, *inter alia*, should be guided by the Supreme Court's opinion in *Dunnigan*, the definition of perjury set forth in the federal criminal perjury statute, 18 U.S.C. § 1621, and case law interpreting that definition, *see, e.g., United States v. Moreno Morales*, 815 F.2d 725, 747 (1st Cir.) ("A statement is material if it is 'capable of influencing the tribunal on the issue before it.'" (quoting *United States v. Scivola*, 766 F.2d 37, 44 (1st Cir. 1985) (citations omitted))), *cert. denied*, 484 U.S. 966, 108 S.Ct. 458, 98 L.Ed.2d 397 (1987). If, after reviewing the testimony, the district court is of the "firm conviction" that Tracy committed perjury, then the district court must impose a two-level enhancement for obstruction of justice. *See, e.g., United States v. Torres*, 960 F.2d 226, 228 (1st Cir.1992); *United States v. Brum*, 948 F.2d 817, 819 (1st Cir.1991); *United States v. Rojo–Alvarez*, 944 F.2d 959, 969 (1st Cir.1991); *United States v. Batista–Polanco*, 927 F.2d 14, 22 (1st Cir.1991); *United States v. Akitoye*, 923 F.2d 221, 228 (1st Cir.1991).

Tracy's conviction is *affirmed*. His sentence is *vacated and remanded* for resentencing in accordance with this opinion.

*So ordered.*

---

**9.** The government suggests that we can imply from the district court's discussion in connection with its ruling on the issue of acceptance of responsibility, that the district court believed that Tracy had knowingly not told the truth in his trial testimony. We decline the invitation. To "imply" a finding of willful intent to commit perjury on the basis of a district court's general comments not made in connection with the court's perjury discussion would stretch too far, especially in a case where the court itself declined to find obstruction. We note also the Supreme Court's direction in *Dunnigan* that district courts "must make independent findings to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition." —— U.S. at ——, 113 S.Ct. at 1117.