UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1713

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN L. TRACY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

Torruella, Cyr and Boudin,

Circuit Judges.

J. Michael McGuinness, by Appointment of the Court, with whom

McGuinness & Parlagreco was on brief for appellant.

Michael M. DuBose, Assistant United States Attorney, with whom

Jay P. McCloskey, United States Attorney, was on brief for the United

States.

September 28, 1994

BOUDIN, Circuit Judge. John Tracy was indicted by a

federal grand jury in Maine on five counts of distribution or

attempted distribution of LSD in violation of 21 U.S.C.

841(a)(1), 846. Tracy failed to appear for his scheduled

trial in August 1991 and was arrested two weeks later in

Florida, carrying a false identification and pretending to be

someone else. He was then separately indicted for failing to

appear in violation of 18 U.S.C. 3146(a)(1).

In October 1991, Tracy was convicted by a jury on three

of the five drug counts and acquitted on two others. The

following month he pleaded guilty to the failure to appear

charge. In April 1992, Tracy was sentenced to 97 months on

the drug convictions and an additional 24 month term, to run

consecutively to the first sentence, for Tracy's failure to

appear for trial.

Tracy then appealed but this court rejected all of

Tracy's claims as to both convictions and sentence. United

States v. Tracy, 989 F.2d 1279 (1st Cir. 1993). The United

States cross-appealed because of the district court's refusal

to enhance Tracy's sentence for obstruction of justice. See

U.S.S.G. 3C1.1. On the government's appeal this court

remanded for further proceedings. See 989 F.2d at 1288-90.

The facts pertaining to the remand need to be briefly

-2-

recounted, as the remand is the predicate for the present

appeal.

In the original pre-sentence report following Tracy's

convictions and guilty plea, the probation officer said that

the drug weight established a base offense level of 26. The

officer recommended a two-level enhancement for obstruction

of justice, because of an asserted direct contradiction

between Tracy's trial testimony and that of Russell Wright,

an individual who had purchased drugs from Tracy while

secretly cooperating with Maine's Bureau of Intergovernmental

Drug Enforcement. Tracy had claimed that the final drug

transaction involved fake LSD. Wright had given testimony

pointing in the other direction, and the jury seemingly had

believed that Tracy was not telling the truth.

Based on Tracy's criminal history category, the

recommended two-point enhancement (to a level of 28) would

have created a sentencing guideline range of 97 to 121

months. At sentencing, the district court declined to impose

the two-point enhancement. The court said:

[It] is a very close call. It is
apparent to the Court that the jury
rejected the credibility of this
defendant and of his testimony at trial.
This Court was present at that time and
heard that testimony. This Court, too,
disbelieved the accuracy of this
testimony.

Nevertheless, there are many policy
considerations that surround the question
of enhancing a base offense level which

-3-

creates potential punishment on the basis
of the Court's conclusion that perjury
has been committed. And the Court is
simply not comfortable in its own mind in
concluding that the conduct amounts to
perjury of sufficient significance to
justify such an enhancement.

Absent the enhancement, the base offense level remained

at 26 and the guideline range was therefore 78 to 97 months.

The district court imposed a sentence of 97 months for the

drug offenses, as well as the separate consecutive 24 month

sentence--not here in issue--for the failure to appear

offense. Apparently, as a matter of principle, the

government appealed the district court's refusal to adopt the

two-point enhancement.

On the appeal, this court held that under United States

v. Dunnigan, 113 S. Ct. 1111 (1993), the obstruction of

justice enhancement is mandatory under U.S.S.G. 3C1.1 where

the defendant willfully obstructed or attempted to obstruct

the administration of justice during the prosecution of the

case. The application note specifically identifies perjury

as conduct comprising obstruction, U.S.S.G. 3C1.1, comment.

(n.3(b)), and Dunnigan requires sentencing courts to apply

the generally accepted definition of perjury under 18 U.S.C.

1621, 113 S. Ct. at 1116.

The Supreme Court said that, under the statutory

definition of perjury, a witness commits perjury if he or she

-4-

"gives false testimony concerning a material matter with a

willful intent to provide false testimony, rather than as a

result of confusion, mistake or faulty memory." 113 S. Ct.

at 1116. Dunnigan added that the sentencing court must "make

independent findings necessary" to establish the enhancement

and that "it is preferable for a district court to address

each element of the alleged perjury in a separate and clear

finding." Id. at 1117.

On the original appeal in Tracy, this court said that

the district court had made clear that it found Tracy's

testimony inaccurate but had not specifically found that the

testimony concerned a material matter or that the inaccuracy

was deliberate. 989 F.2d at 1289-90. At the same time, this

court made clear that under the guideline and Dunnigan, the

district court could not both find perjury and yet require

"something more than basic perjury to justify an enhancement

. . . ." Id. at 1290. In other words, the enhancement had

to be imposed where the requisites of perjury existed.

On remand, the government apparently asked the

district court to make an explicit finding that Tracy's

testimony, contradicted by Wright, had been perjurious. But

having made its point, the government professed itself

satisfied with the 97-month sentence previously imposed for

the drug counts, noting that it was a permissible sentence

under the new guideline range that would result if the

-5-

district court did find perjury and added the two-level

enhancement to the base offense level of 26. The district

court took quite a different course.

Instead of focusing upon the instance of possible

perjury identified by the probation officer, the district

court held a hearing on remand, in June 1993, and determined

that Tracy had lied at his trial on two other points: in

testifying that he had sold LSD to Wright only because he was

afraid of Wright, and in claiming that he had left Maine for

Florida because he believed his girlfriend to be pregnant but

intended after the child's birth to return to Maine and stand

trial. The court found that these lies were willful and

material and that the requirements of perjury were therefore

satisfied.

The two-level enhancement based on these perjury

findings increased Tracy's offense level to 28, yielding a

guideline range of 97 to 121 months for one with Tracy's

criminal history. As he had done in the first instance, the

district judge sentenced Tracy at the top of the guideline

range. This time, however, the range went higher and the

sentence now imposed on the drug counts was 121 months. As

before, this is to be followed by a 24-month term on the

failure to appear count. Tracy has now appealed from this

new sentence.

-6-

On appeal, Tracy contends that the district court could

not on this record properly find perjury. His appellate

brief contrasts Tracy's situation with that of the defendant

in Dunnigan where the Supreme Court pointed to "numerous

witnesses" contradicting the defendant on "so many facts on

which she could not have been mistaken." 113 S. Ct. at 1117.

Tracy's brief also tries to focus attention on the original

conflict between Tracy and Wright, one part of which involved

the color and design of the blotter paper on which the LSD

was tendered.

The district court's findings that perjury occurred in

this case can be overturned only if they are clearly

erroneous. See United States v. Aymelek, 926 F.2d 64, 68

(1st Cir. 1991). In this instance, there is ample evidence

in the record to support the district court's determination

that there were two separate episodes of perjury (either one

would suffice for an enhancement). Although Tracy's brief

does not argue in detail about the adequacies of the

evidence, we have nevertheless reviewed the record and

recount the evidence quite briefly.

At his trial, Tracy had offered an entrapment defense--

the transactions were difficult to deny since they had been

recorded--and in aid of that defense, he had testified that

he had been afraid of Wright because of Wright's aggressive

manner. Tracy's sixteen year old stepdaughter testified that

-7-

she had been frightened by Wright and in other respects

supported Tracy's claim of fear. On the other hand, because

the drug transactions had been monitored and recorded, there

was also evidence from witnesses, presumably supported by the

tapes, that at no point had Wright said anything to threaten

or intimidate Tracy.

The district judge at the hearing after remand expressly

found Tracy had manufactured the intimidation defense and

that it was "known by the witness at the time to be untrue

and it goes to a material element of the case against him."

The district court judge heard Tracy and his stepdaughter

testify and also had before him the evidence that no threats

or intimidating remarks were made by Wright. Obviously, the

presence or absence of fear in Tracy's mind is a subjective

matter. But the district judge did not commit clear error

when he weighed the conflicting inferences and found that

Tracy had lied about his own state of mind.

In particular, Tracy's claim that he was in fear of

Wright must have been very hard to reconcile with Tracy's own

claim that in the final abortive sale he had attempted to

sell Wright fake LSD (and was therefore not guilty of a drug

offense regardless of entrapment). The notion that one would

sell fake drugs to a buyer whom one knows and fears, and who

could easily return to retaliate, is doubtful on its face.

-8-

Tracy's explanation--that Wright would merely seek to get his

money back--sounds especially lame.

In the second perjury episode, concerning Tracy's

failure to appear for trial, the inferences are not even

close. Tracy obtained several postponements and then,

instead of appearing on the final trial date, absconded to

Florida. At trial, the government offered evidence that he

had fled, coupled with further evidence that when caught he

was carrying false identification and using a false name, in

order to create an inference of guilt on the drug counts.

Tracy's own testimony-- that he had gone to Florida merely to

be with his pregnant girlfriend during the birth of their

child and intended to return to trial--was material testimony

because it sought to refute the inference that he had fled

because he was guilty.

Most people would be fairly skeptical at Tracy's claim

that he had coincidentally learned of the possible pregnancy

just before the date of his oft-postponed trial and had

departed without explanation from Maine for the purpose of

bringing comfort to his girlfriend. They would be even more

skeptical of Tracy's claim that by coincidence he was (so he

claimed) about to return to Maine just when he was arrested.

News that Tracy had given a false name when arrested and had

been carrying a driver's license and birth certificate in the

name of another person would for most people convert

-9-

skepticism into hardfast disbelief. The evidence, in sum,

was sufficient to support the perjury finding.

Turning from the evidence to other claims of error, we

begin with Tracy's assertion that the district court made its

Dunnigan findings "in the most conclusory and threadbare

fashion" and "inadequately explained its basis for its

purported findings . . . ." Tracy does not deny that the

district judge made, for both perjury episodes, each of the

three ultimate findings of inaccuracy, willfulness and

materiality. Nor is there any confusion about what

statements were found perjurious: the district court took

the occasion to identify (by line and page numbers) six

separate perjurious statements by Tracy, four relating to the

intimidation claim and two to the Florida flight. Yet,

putting aside rhetoric about threadbareness, Tracy is in

substance correct that there are no further subsidiary

findings, nor any explanation of the district court's

analysis or evaluation of Tracy's testimony to underpin the

trial judge's finding that Tracy was willfully and materially

inaccurate.

But the district court had no obligation to provide such

subsidiary findings or, as would be more pertinent here, an

explanation as to the district court's own reasoning process.

There is no such requirement in sentencing determinations,

and Dunnigan imposed nothing more than a requirement that the

-10-

requisites of perjury be found, preferably in explicit and

separate findings. In fact, it is commonplace in sentencing

for a district judge to announce the court's factual

conclusion--e.g., the quantity of drugs foreseen by the

defendant or the presence of a weapon--without in any way

providing subsidiary findings or an evaluation of conflicting

evidence.

On review, the appeals court must be able to ascertain

the ultimate finding and there must be evidence (regardless

of whether it has been specifically identified by the

district judge) that would permit a reasonable fact finder to

make such a determination, giving such deference to the fact

finder as may be appropriate. Perhaps in some cases it would

be impossible to exercise a review function without further

information about what the district judge had found or how he

or she had reasoned about the evidence. For the most part,

as here, no such need exists. In this respect we normally

review the evidence and the result, but not the reasoning by

which the result was reached by the district court.

This discussion also answers the substance of Tracy's

related claim, namely, that the district court failed to

explain why it rejected the possibility of mistake in

appraising Tracy's testimony. The Supreme Court did advert

in Dunnigan to the possibility of "confusion, mistake or

faulty memory." 113 S. Ct. at 1117. But where as here the

-11-

evidence would permit a reasonable fact finder to conclude

that an inaccuracy was willful rather than mistaken, the

judge has no separate obligation to explain why he or she

rejected the inference of mistake and adopted the inference

of willfulness. This brings us to Tracy's next point.

His appeal brief calls our attention to commentary to

U.S.S.G. 3C1.1 that "[i]n applying this provision in

respect to alleged false testimony or statements by the

defendant, such testimony or statements should be evaluated

in a light most favorable to the defendant." Id. comment.

(n.1). Tracy is apparently under the impression (based on

other statements in his brief) that this quoted language

means that, in general, "close" cases under section 3C1.1

must be resolved in favor of the defendant. This is a

misreading of the commentary and an exaggeration of the

government's burden.

We have repeatedly said that this "commentary" "does not

mandate the resolution of every conflict in testimony in

favor of the defendant"; it merely resolves in the

defendant's favor "those conflicts about which the judge,

after weighing the evidence, has no firm conviction." United

States v. Rojo-Alvarez, 944 F.2d 959, 969 (1st Cir. 1991)

(quoting other circuits). Otherwise, "the safeguard would

swallow the rule in a single gulp," United States v.

Akitoye, 923 F.2d 221, 228 (1st Cir. 1991), since to take the

-12-

evidence in the light most favorable to the defendant is to

credit his or her testimony. In this case, the trial judge

did have a firm, and amply warranted, conviction that perjury

had been committed.

We note, in addition, that the quoted commentary read

literally addresses a rather narrow problem peculiar to

perjury and other charges that match a defendant's testimony

against "the truth" as later found by the judge or jury.

Words, even in context, can be subject to more than one

plausible reading; and this is as true in parsing the

testimony of a defendant at trial as in construing a statute.

In a perjury case, one of the plausible readings may be in

conflict with "the truth" and undoubtedly willful if that

meaning were intended; the other reading, also plausible but

perhaps less so, may render the defendant's statement

accurate, or at least make willfulness unlikely.

The precise words of quoted commentary say that in such

cases the defendant's "testimony or statement" should be read

in the light most favorable to the defendant. To the extent

that an innocent reading may be plausible (even though

perhaps less plausible than an inculpatory one), the

commentary resolves this doubt in favor of the defendant.

The Sixth Circuit recently put the matter thusly:

We note that this [commentary] does
not require that the evidence in its

entirety be taken in a light most

favorable to the defendant. It is only

-13-

the defendant's statement that is to be
taken in a light most favorable to him.
So, if the meaning of the defendant's
statement is ambiguous, the ambiguity
should be resolved in his favor to
prevent a finding of perjury when the
defendant's statement, taken another way,
would not have been perjurious.

United States v. Crousore, 1 F.3d 382, 385 (6th Cir. 1993).

Here, as in Crousore, there is no ambiguity in the

meaning of Tracy's statements. We hasten to add that there

is also nothing that suggests that the present case was a

close one as to either inaccuracy or willfulness. Still less

is there any possibility of a mistake, that is, testimony

that was not true but was honestly believed to be so when

delivered. The color and design of the blotter paper might

have involved a possibility of mistake, but Tracy could not

have been mistaken about his fear or lack of fear of Wright,

or about his motive for going to Florida (putting aside

psychological subtleties that are not involved in this case).

We conclude by rejecting, and mildly reprimanding,

Tracy's claim that a reasonable doubt of perjury existed in

the trial judge's own mind. Tracy's brief quotes the trial

judge as saying, at the original sentencing, that he was then

"not comfortable in its own mind in concluding that the

conduct amounts to perjury . . ." (sic). Tracy argues that,

if the district court had such a doubt about the presence of

perjury, then the government could not have met its burden.

Apart from the fact that the district court was then talking

-14-

about a different perjurious episode (the fake LSD claim),

the argument is undercut by other words of the judge not

quoted in Tracy's brief.

The full sentence was as follows: "And the Court simply

is not comfortable in its own mind in concluding that the

conduct amounts to perjury of sufficient significance to

justify an enhancement." Reading this full sentence in the

context of the two full paragraphs (quoted earlier in this

opinion), one would probably conclude that when the district

court said that this was a "close call" and said it was "not

comfortable in its own mind," it was referring not to the

evidence of inaccuracy or willfulness or even materiality but

rather to the policy arguments against sanctioning a

defendant for testifying at trial in any but the most extreme

case.

We were ourselves uncertain enough about the district

court's intention to remand, but we do not think that this

doubt warranted Tracy's brief in omitting the balance of the

sentence it quoted. As it happens, on remand the district

judge addressed this very issue, explaining that he had

originally given the defendant the benefit of the doubt on

the enhancement because "I was very concerned that, as a

matter of policy, imposition of that kind of enhancement

might chill other defendants' exercise of their right to

testify at trial." Needless to say, the district court's

-15-

concern is a reasonable one, but Dunnigan binds us and the

district court alike. Any charge that the district court's

original policy doubts and present findings are inconsistent

is without basis.

Tracy's final claim concerns an amendment to the

sentencing guidelines that became effective after the

district court resentenced Tracy in the remanded proceeding.

Effective November 1, 1993, the sentencing guidelines have

altered the method for computing LSD in a manner that Tracy's

brief claims is favorable to his position and would result in

a lower guideline range. U.S.S.G. App. C, Amendment 488.

The Sentencing Commission has determined that the amendment

applies retroactively. Id., Amendment 502. See 28 U.S.C.

994(u). A sentence imposed before the new computational

method can therefore be readjusted by the district court to

conform to the amended approach. 18 U.S.C. 3582(c)(2).

Tracy at the close of his brief asks that we remand the

matter to the district court to permit resentencing in

accordance with the amendment. Such a recomputation,

however, presents issues of fact and may involve other

questions about which the government and Tracy differ. The

statute providing for retroactive adjustments allows the

defendant to file a motion with the district court seeking

such an adjustment. 18 U.S.C. 3582(c)(2). Our affirmance

in this case is without prejudice to Tracy's right to do so.

-16-

We have a final observation about the government's

earlier appeal. It now appears from its position at the

remand hearing that the government was satisfied with the

sentence originally imposed. Yet as a result of the

government's appeal Tracy has now to serve an additional two

years over and above the ten years' imprisonment originally

imposed. Some portion of the full sentence reflects Tracy's

criminal history, and his flight to Florida. But neither a

ten nor a twelve-year sentence could be called unduly

lenient.

Understandably, the government wished to establish the

principle that perjury, and not "something more," merits an

enhancement. But this point could have been made as easily

in a later case where the government actually wanted a longer

sentence. A litigant is not obligated to worry about the

price paid by others to establish a matter of principle.

Still, one hopes that a prosecuting agency would weigh the

price in its own calculus.

Affirmed.

-17-