**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David A. CROUSORE, Defendant–
Appellant.**

Nos. 92–5449, 92–5450.

United States Court of Appeals,
Sixth Circuit.

Argued March 5, 1993.

Decided July 8, 1993.*

---

* This decision was originally issued as an "unpublished decision" filed on July 8, 1993. On July 28, 1993, the court designated the opinion as one recommended for full-text publication.

David P. Grise, Asst. U.S. Atty. (argued and briefed), Karen K. Caldwell, U.S. Atty., Lexington, KY, for plaintiff-appellee.

Don Brad White (argued and briefed), Lexington, KY, for defendant-appellant.

Before: KEITH and BATCHELDER, Circuit Judges; and TAYLOR, District Judge.**

BATCHELDER, Circuit Judge.

In this case we are asked to review the sentence imposed by the district court on David Crousore after he pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and one count of possession of marijuana in violation of 21 U.S.C. § 844. The sentencing judge refused to grant Crousore a two-level credit for acceptance of responsibility (U.S.S.G. § 3E1.1) because of Crousore's post-arrest activities, and enhanced Crousore's sentence for obstruction of justice (U.S.S.G. § 3C1.1) because of Crousore's perjurious testimony. Finding no error, we affirm.

I

Defendant Crousore was arrested on April 2, 1991. Immediately following his arrest, Crousore gave a statement to FBI Agent David Potts in which he candidly admitted to Agent Potts that, among other things, he had purchased a Jennings .22–caliber handgun in Kentucky using an assumed name and transported the handgun to Michigan where he exchanged it for three pounds of marijuana.[1] Crousore was taken into custody, and on April 8, 1991, a detention hearing was held. At the hearing, Agent Potts testified as to the statement Crousore made at the time of his arrest, including Crousore's admission that he traded the Jennings handgun for marijuana. Crousore then testified and, although he admitted giving a statement to Agent Potts and again admitted that he had

obtained a Jennings .22–caliber handgun and transported it to Michigan, he explained that he had not traded the gun for marijuana, but had given it to someone as a gift.

A federal grand jury returned a nine-count indictment charging Crousore with one drug offense and various firearm offenses based on the alleged gun-for-marijuana swap and other activities not relevant to this appeal. The government later filed a felony information charging Crousore with possession of marijuana.[2] On November 1, 1991, Crousore waived indictment on the possession of marijuana charged in the information and entered into a plea agreement in which he agreed to plead guilty to one count of possession of marijuana in violation of 21 U.S.C. § 844 and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). In exchange, the government agreed to dismiss the remaining counts in the indictment. When the district court asked Crousore to explain what it was that made him guilty, Crousore said that he had purchased a firearm by providing false identification to a gun dealer. Crousore was not asked and he did not volunteer any information about the alleged exchange of the gun for marijuana.

At his sentencing hearing, Crousore said he accepted responsibility for the charges against him because he did in fact purchase the gun and possess the marijuana. On cross-examination, the government asked, "[W]hen you were giving [the FBI] the statement, didn't you tell them that 'I had taken the gun to Detroit and traded the gun with several hundred dollars cash for marijuana'?" Crousore responded, "No, sir, they had told me that was what happened." On redirect examination, Crousore confirmed that at his detention hearing he told the court that he had given the handgun as a gift and again denied having exchanged the gun for marijuana.

Crousore was incarcerated in the Franklin County Regional Jail following the detention

---

** The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. As will become clear, Crousore's consistent testimony before the district court was that he did

not tell Agent Potts that he had bartered the gun for marijuana.

2. The possession was charged as a felony because of Crousore's prior controlled substance conviction.

hearing. A couple weeks after his arrest and before his indictment, Crousore made a mistake in judgment. He arranged, from the jail, to meet with an acquaintance of his, who unbeknownst to Crousore, was acting as a government informant. Crousore asked for the informant's assistance in getting rid of two pounds of marijuana. Crousore requested that the informant locate Kim Marshall, Crousore's fiancee, confirm that she knew the location of the marijuana, and get back to him. In a taped phone conversation, Kim Marshall told the informant that she could not quote him a price for the marijuana until she had talked to Crousore. Kim Marshall apparently called Crousore and discussed the sale price with him. The sale was eventually made, and Crousore, Marshall, and another were indicted by a state grand jury for this drug transaction.

The presentence investigation report offered a preliminary calculation of Crousore's sentence under the U.S. Sentencing Guidelines. The base offense level was determined (to which neither party objects), and the report recommended an enhancement for obstruction of justice and a rejection of Crousore's requested acceptance-of-responsibility credit. At sentencing, the district court accepted these recommendations. Agreeing that Crousore's jailhouse arrangements to dispose of the marijuana demonstrated a lack of "voluntary termination or withdrawal from criminal conduct or associations," the court denied the acceptance-of-responsibility credit. On the obstruction-of-justice issue, the court resolved what it described as a "credibility question" in favor of the government and found by a preponderance of the evidence that Crousore had committed perjury by denying at his detention hearing and sentencing hearing that he told Agent Potts that he had traded the gun for marijuana. The court found that Crousore's perjury required the enhancement for obstruction of justice.

## II

### A. Obstruction of Justice

Crousore first contends that the district court erred in adjusting his sentence upward for obstruction of justice pursuant to U.S.S.G. § 3C1.1. In this regard, he makes two arguments.

First, Crousore argues that, assuming he did perjuriously deny that he traded the handgun for marijuana, the perjury did not relate to the "instant offense" and therefore was improperly considered as a basis for the obstruction-of-justice enhancement. Crousore's argument could be taken in two different ways: (1) because Crousore lied about his commission of another offense (i.e., using or carrying a firearm in relation to a drug offense) and not the offenses to which he pleaded guilty, his perjurious testimony is not a proper basis for the enhancement, or (2) his perjurious testimony bore no relation to the instant offense and thus was not material as § 3C1.1 requires. We consider both arguments, and neither leads us to the conclusion that the district court erred.

The obstruction-of-justice guideline reads in full, "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. § 3C1.1. A careful reading of this section reveals its applicability to Crousore's conduct and disposes of his argument. This guideline applies to conduct during the investigation, prosecution, and sentencing of the instant offense, i.e., the offense for which the defendant is being sentenced under the Guidelines. Crousore's perjurious testimony was during his detention hearing and during his sentencing hearing, thus satisfying the requirement of § 3C1.1 that the obstruction be during the investigation, prosecution, or sentencing of the instant offense. Whether Crousore's lie was about his guilt on the specific charges to which he pleaded guilty is not an issue under § 3C1.1. For example, a defendant might take the stand at his trial for bank robbery, and upon cross-examination by the government as to certain prior bad acts, perjuriously deny that the acts in question occurred. At sentencing for conviction on the charge of bank robbery, the court may consider the defendant's untruthful testimony about his prior bad acts because the testimony was during the prosecution of the instant offense,

*i.e.*, the bank robbery. Many other examples can be found in the case law. *See, e.g., United States v. Jones,* 950 F.2d 1309 (7th Cir.1991) (defendant's perjurious testimony that one codefendant talked him into the bank robbery and another codefendant was not involved warranted obstruction enhancement), *cert. denied,* —— U.S. ——, 112 S.Ct. 1700, 118 L.Ed.2d 410 (1992); *United States v. Matos,* 907 F.2d 274 (2d Cir.1990) (defendant's false testimony at suppression hearing that no rights warnings had been given to him warranted obstruction); *United States v. Cusumano,* 943 F.2d 305 (3d Cir.1991) (defendant's false statement concerning his financial condition to probation officer preparing presentence investigation report warranted obstruction enhancement), *cert. denied,* —— U.S. ——, 112 S.Ct. 881, 116 L.Ed.2d 785 (1992); *United States v. Garcia,* 902 F.2d 324 (5th Cir.1990) (material misrepresentation to probation officer regarding prior arrests justified enhancement). Therefore, the test is not whether the false statement was about the actual crime charged, but whether it was made during the investigation, prosecution, or sentencing of the "instant offense."

This, of course, does not mean that trivial and immaterial lies warrant the obstruction enhancement, for § 3C1.1 does not apply to these. *See* § 3C1.1, Commentary (n. 4). We note, however, that Crousore's perjurious testimony *was* material. Material information is information that, if believed, would tend to influence or affect the issue under determination. U.S.S.G. § 3C1.1, Commentary (n. 5). Information about the drug transaction was relevant information at both the detention hearing and sentencing. At the detention hearing, the court needed to know the true nature of the offense so that it could correctly assess Crousore's flight risk or risk to society. At sentencing, the information was relevant to the district court's efforts to mete out an appropriate sentence.

Therefore, taken either way, Crousore's argument does not prevail.

■ Crousore next argues that the evidence was insufficient to find that he committed perjury in the first place. We concede at the outset that Crousore makes a plausible case for a factual finding that he never told Agent Potts that he had exchanged the gun for marijuana and therefore his repeated testimony to the contrary was not inconsistent and not perjurious. Before they arrested Crousore, the FBI Agents had been told by Crousore's business partner, James Meadows, that Crousore and Meadows traveled to Michigan together where Crousore traded the gun for marijuana. When Crousore was arrested and voluntarily admitted that he did many of the acts alleged by Meadows (*e.g.,* buying the gun, traveling to Michigan, delivering the gun, and returning to Kentucky with the marijuana), Agent Potts, in writing his report after the interview, might have incorrectly recalled that Crousore said he exchanged the gun for marijuana, because that was what Potts previously understood as the nature of the transaction. We also note that in Crousore's testimony at the detention hearing and at sentencing he again fully admitted all the events of the Michigan trip except for the gun-for-marijuana transaction. For that reason, this case is distinguishable from a case in which the defendant later denies making the statement at all. We further acknowledge that in resolving the question of whether the defendant committed perjury, allegedly false statements should be evaluated in a light most favorable to the defendant. *See* U.S.S.G. § 3C1.1, Commentary (n. 1); *United States v. Head,* 927 F.2d 1361 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 144, 116 L.Ed.2d 110 (1991).[3]

■■ However, the district court correctly identified this conflict in the testimony as one which depended on credibility for its

---

**3.** We note that this does not require that the evidence *in its entirety* be taken in a light most favorable to the defendant. It is only the defendant's statement that is to be taken in a light most favorable to him. So, if the meaning of the defendant's statement is ambiguous, the ambiguity should be resolved in his favor to prevent a finding of perjury when the defendant's state-

ment, taken another way, would not have been perjurious. Here, there is no ambiguity in the meaning of Crousore's statements to be resolved in his favor. He denied trading the gun for marijuana and that its exactly how the court took his statement. The problem in this case arises with the conflict between the testimony of Agent Potts and the testimony of Crousore.

**386**

resolution. And credibility determinations are for the trial court, not for the court of appeals. Unless the district court's finding of fact is clearly erroneous, we must accept it. *See* 18 U.S.C. § 3742(e); *United States v. Moreno,* 899 F.2d 465, 470 (6th Cir.1990). Because Agent Potts testified that Crousore admitted trading the gun for marijuana, Crousore's later statements, even when any doubts about his meaning are resolved in his favor, are contrary to his earlier admission and thus constituted perjury. When a defendant perjures himself before the court as to a material matter, the district court is generally without discretion in imposing the obstruction-of-justice enhancement. *See United States v. Alvarez,* 927 F.2d 300, 303 (6th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2246, 114 L.Ed.2d 487 (1991).

We find no reversible error with regard to the obstruction-of-justice enhancement.

### B. Acceptance of Responsibility

Crousore also argues that it was a clear abuse of discretion for the district court to refuse to grant him the two-level reduction for acceptance of responsibility. He notes that upon his arrest he confessed to several criminal acts. At his detention hearing, he again made statements against his own penological interests and admitted several offenses. His contrition is further exhibited by his pleading guilty. The acceptance of responsibility for his actions was again apparent at the time of sentencing when he owned up to his criminal behavior. In short, Crousore was the perfect candidate for the acceptance-of-responsibility reduction—except for one thing. He arranged, from jail, the sale of two pounds of marijuana.

Section 3E1.1 of the Guidelines reads, "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." In determining whether the defendant qualifies for the reduction, it is appropriate to consider "voluntary termination or withdrawal from criminal conduct or associations," § 3E1.1 Commentary (n. 1(b)), and although truthfully admitting guilt is significant acceptance of responsibility, "this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility," § 3E1.1 Commentary (n. 3). It was Crousore's burden to show by a preponderance of the evidence that he had accepted responsibility for his actions. Such acceptance is a question of fact and the district court's findings of fact on this matter are accorded considerable deference and are not to be disturbed unless clearly erroneous. *United States v. Williams,* 940 F.2d 176, 181 (6th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 666, 116 L.Ed.2d 757 (1991); *United States v. Snyder,* 913 F.2d 300, 305 (6th Cir.1990), *cert. denied,* 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991).

The district court's finding is not clearly erroneous. While we commend Crousore for his admissions of guilt and his acceptance of responsibility for those things which he admitted doing, we think the district court was completely justified in taking the arrangement of a drug deal from the jailhouse as compelling evidence that Crousore did not quite measure up in the acceptance-of-responsibility category.

### III

For the reasons stated above, we find no reversible error in the district court's sentencing of David Crousore, and the district court is therefore AFFIRMED.