**UNITED STATES of America, Appellee,**

v.

**John L. TRACY, Defendant, Appellant.**

No. 93–1713.

United States Court of Appeals,
First Circuit.

Heard April 4, 1994.

Decided Sept. 28, 1994.

Certiorari Denied Nov. 28, 1994.

See 115 S.Ct. 609.

J. Michael McGuinness, by Appointment of the Court, with whom McGuinness & Parlagreco, Boston, MA, was on brief, for appellant.

Michael M. DuBose, Asst. U.S. Atty., with whom Jay P. McCloskey, U.S. Atty., Portland, ME, was on brief, for U.S.

Before TORRUELLA, CYR and BOUDIN, Circuit Judges.

BOUDIN, Circuit Judge.

John Tracy was indicted by a federal grand jury in Maine on five counts of distribution or attempted distribution of LSD in violation of 21 U.S.C. §§ 841(a)(1), 846. Tracy failed to appear for his scheduled trial in August 1991 and was arrested two weeks later in Florida, carrying a false identification and pretending to be someone else. He was then separately indicted for failing to appear in violation of 18 U.S.C. § 3146(a)(1).

In October 1991, Tracy was convicted by a jury on three of the five drug counts and acquitted on two others. The following month he pleaded guilty to the failure to appear charge. In April 1992, Tracy was sentenced to 97 months on the drug convictions and an additional 24 month term, to run consecutively to the first sentence, for Tracy's failure to appear for trial.

Tracy then appealed but this court rejected all of Tracy's claims as to both convictions and sentence. *United States v. Tracy*, 989 F.2d 1279 (1st Cir.1993). The United States cross-appealed because of the district court's refusal to enhance Tracy's sentence for obstruction of justice. *See* U.S.S.G. § 3C1.1. On the government's appeal this court remanded for further proceedings. *See* 989 F.2d at 1288–90. The facts pertaining to the remand need to be briefly recounted, as the remand is the predicate for the present appeal.

In the original pre-sentence report following Tracy's convictions and guilty plea, the probation officer said that the drug weight established a base offense level of 26. The officer recommended a two-level enhancement for obstruction of justice, because of an asserted direct contradiction between Tracy's trial testimony and that of Russell Wright, an individual who had purchased drugs from Tracy while secretly cooperating with Maine's Bureau of Intergovernmental Drug Enforcement. Tracy had claimed that the final drug transaction involved fake LSD. Wright had given testimony pointing in the other direction, and the jury seemingly had believed that Tracy was not telling the truth.

Based on Tracy's criminal history category, the recommended two-point enhancement

(to a level of 28) would have created a sentencing guideline range of 97 to 121 months. At sentencing, the district court declined to impose the two-point enhancement. The court said:

> [It] is a very close call. It is apparent to the Court that the jury rejected the credibility of this defendant and of his testimony at trial. This Court was present at that time and heard that testimony. This Court, too, disbelieved the accuracy of this testimony.
>
> Nevertheless, there are many policy considerations that surround the question of enhancing a base offense level which creates potential punishment on the basis of the Court's conclusion that perjury has been committed. And the Court is simply not comfortable in its own mind in concluding that the conduct amounts to perjury of sufficient significance to justify such an enhancement.

Absent the enhancement, the base offense level remained at 26 and the guideline range was therefore 78 to 97 months. The district court imposed a sentence of 97 months for the drug offenses, as well as the separate consecutive 24 month sentence—not here in issue—for the failure to appear offense. Apparently, as a matter of principle, the government appealed the district court's refusal to adopt the two-point enhancement.

On the appeal, this court held that under *United States v. Dunnigan*, —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the obstruction of justice enhancement is mandatory under U.S.S.G. § 3C1.1 where the defendant willfully obstructed or attempted to obstruct the administration of justice during the prosecution of the case. The application note specifically identifies perjury as conduct comprising obstruction, U.S.S.G. § 3C1.1, comment. (n.3(b)), and *Dunnigan* requires sentencing courts to apply the generally accepted definition of perjury under 18 U.S.C. § 1621, —— U.S. at ——, 113 S.Ct. at 1116.

The Supreme Court said that, under the statutory definition of perjury, a witness commits perjury if he or she "gives false testimony concerning a material matter with a willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." —— U.S. at ——, 113 S.Ct. at 1116. *Dunnigan* added that the sentencing court must "make independent findings necessary" to establish the enhancement and that "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding." *Id.* at ——, 113 S.Ct. at 1117.

On the original appeal in *Tracy*, this court said that the district court had made clear that it found Tracy's testimony inaccurate but had not specifically found that the testimony concerned a material matter or that the inaccuracy was deliberate. 989 F.2d at 1289–90. At the same time, this court made clear that under the guideline and *Dunnigan*, the district court could not both find perjury and yet require "something more than basic perjury to justify an enhancement...." *Id.* at 1290. In other words, the enhancement had to be imposed where the requisites of perjury existed.

On remand, the government apparently asked the district court to make an explicit finding that Tracy's testimony, contradicted by Wright, had been perjurious. But having made its point, the government professed itself satisfied with the 97–month sentence previously imposed for the drug counts, noting that it was a permissible sentence under the new guideline range that would result if the district court did find perjury and added the two-level enhancement to the base offense level of 26. The district court took quite a different course.

Instead of focusing upon the instance of possible perjury identified by the probation officer, the district court held a hearing on remand, in June 1993, and determined that Tracy had lied at his trial on two other points: in testifying that he had sold LSD to Wright only because he was afraid of Wright, and in claiming that he had left Maine for Florida because he believed his girlfriend to be pregnant but intended after the child's birth to return to Maine and stand trial. The court found that these lies were willful and material and that the requirements of perjury were therefore satisfied.

The two-level enhancement based on these perjury findings increased Tracy's offense

level to 28, yielding a guideline range of 97 to 121 months for one with Tracy's criminal history. As he had done in the first instance, the district judge sentenced Tracy at the top of the guideline range. This time, however, the range went higher and the sentence now imposed on the drug counts was 121 months. As before, this is to be followed by a 24–month term on the failure to appear count. Tracy has now appealed from this new sentence.

On appeal, Tracy contends that the district court could not on this record properly find perjury. His appellate brief contrasts Tracy's situation with that of the defendant in *Dunnigan* where the Supreme Court pointed to "numerous witnesses" contradicting the defendant on "so many facts on which she could not have been mistaken." —— U.S. ——, 113 S.Ct. at 1117. . Tracy's brief also tries to focus attention on the original conflict between Tracy and Wright, one part of which involved the color and design of the blotter paper on which the LSD was tendered.

The district court's findings that perjury occurred in this case can be overturned only if they are clearly erroneous. *See United States v. Aymelek*, 926 F.2d 64, 68 (1st Cir. 1991). In this instance, there is ample evidence in the record to support the district court's determination that there were two separate episodes of perjury (either one would suffice for an enhancement). Although Tracy's brief does not argue in detail about the adequacies of the evidence, we have nevertheless reviewed the record and recount the evidence quite briefly.

■ At his trial, Tracy had offered an entrapment defense—the transactions were difficult to deny since they had been recorded—and in aid of that defense, he had testified that he had been afraid of Wright because of Wright's aggressive manner. Tracy's sixteen year old stepdaughter testified that she had been frightened by Wright and in other respects supported Tracy's claim of fear. On the other hand, because the drug transactions had been monitored and recorded, there was also evidence from witnesses, presumably supported by the tapes, that at no point had Wright said anything to threaten or intimidate Tracy.

The district judge at the hearing after remand expressly found Tracy had manufactured the intimidation defense and that it was "known by the witness at the time to be untrue and it goes to a material element of the case against him." The district court judge heard Tracy and his stepdaughter testify and also had before him the evidence that no threats or intimidating remarks were made by Wright. Obviously, the presence or absence of fear in Tracy's mind is a subjective matter. But the district judge did not commit clear error when he weighed the conflicting inferences and found that Tracy had lied about his own state of mind.

In particular, Tracy's claim that he was in fear of Wright must have been very hard to reconcile with Tracy's own claim that in the final abortive sale he had attempted to sell Wright *fake* LSD (and was therefore not guilty of a drug offense regardless of entrapment). The notion that one would sell fake drugs to a buyer whom one knows and fears, and who could easily return to retaliate, is doubtful on its face. Tracy's explanation—that Wright would merely seek to get his money back—sounds especially lame.

■ In the second perjury episode, concerning Tracy's failure to appear for trial, the inferences are not even close. Tracy obtained several postponements and then, instead of appearing on the final trial date, absconded to Florida. At trial, the government offered evidence that he had fled, coupled with further evidence that when caught he was carrying false identification and using a false name, in order to create an inference of guilt on the drug counts. Tracy's own testimony—that he had gone to Florida merely to be with his pregnant girlfriend during the birth of their child and intended to return to trial—was material testimony because it sought to refute the inference that he had fled because he was guilty.

Most people would be fairly skeptical at Tracy's claim that he had coincidentally learned of the possible pregnancy just before the date of his oft-postponed trial and had departed without explanation from Maine for the purpose of bringing comfort to his girlfriend. They would be even more skeptical

of Tracy's claim that by coincidence he was (so he claimed) about to return to Maine just when he was arrested. News that Tracy had given a false name when arrested and had been carrying a driver's license and birth certificate in the name of another person would for most people convert skepticism into hardfast disbelief. The evidence, in sum, was sufficient to support the perjury finding.

Turning from the evidence to other claims of error, we begin with Tracy's assertion that the district court made its *Dunnigan* findings "in the most conclusory and threadbare fashion" and "inadequately explained its basis for its purported findings...." Tracy does not deny that the district judge made, for both perjury episodes, each of the three ultimate findings of inaccuracy, willfulness and materiality. Nor is there any confusion about what statements were found perjurious: the district court took the occasion to identify (by line and page numbers) six separate perjurious statements by Tracy, four relating to the intimidation claim and two to the Florida flight. Yet, putting aside rhetoric about threadbareness, Tracy is in substance correct that there are no further subsidiary findings, nor any explanation of the district court's analysis or evaluation of Tracy's testimony to underpin the trial judge's finding that Tracy was willfully and materially inaccurate.

■ But the district court had no obligation to provide such subsidiary findings or, as would be more pertinent here, an explanation as to the district court's own reasoning process. There is no such requirement in sentencing determinations, and *Dunnigan* imposed nothing more than a requirement that the requisites of perjury be found, preferably in explicit and separate findings. In fact, it is commonplace in sentencing for a district judge to announce the court's factual conclusion—*e.g.,* the quantity of drugs foreseen by the defendant or the presence of a weapon—without in any way providing subsidiary findings or an evaluation of conflicting evidence.

On review, the appeals court must be able to ascertain the ultimate finding *and* there must be evidence (regardless of whether it has been specifically identified by the district judge) that would permit a reasonable fact finder to make such a determination, giving such deference to the fact finder as may be appropriate. Perhaps in some cases it would be impossible to exercise a review function without further information about what the district judge had found or how he or she had reasoned about the evidence. For the most part, as here, no such need exists. In this respect we normally review the evidence and the result, but not the reasoning by which the result was reached by the district court.

This discussion also answers the substance of Tracy's related claim, namely, that the district court failed to explain why it rejected the possibility of mistake in appraising Tracy's testimony. The Supreme Court did advert in *Dunnigan* to the possibility of "confusion, mistake or faulty memory." —— U.S. ——, 113 S.Ct. at 1117. But where as here the evidence would permit a reasonable fact finder to conclude that an inaccuracy was willful rather than mistaken, the judge has no separate obligation to explain *why* he or she rejected the inference of mistake and adopted the inference of willfulness.

This brings us to Tracy's next point. His appeal brief calls our attention to commentary to U.S.S.G. § 3C1.1 that "[i]n applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant." *Id.* comment. (n. 1). Tracy is apparently under the impression (based on other statements in his brief) that this quoted language means that, in general, "close" cases under section 3C1.1 must be resolved in favor of the defendant. This is a misreading of the commentary and an exaggeration of the government's burden.

■ We have repeatedly said that this "commentary" "does not mandate the resolution of every conflict in testimony in favor of the defendant"; it merely resolves in the defendant's favor "those conflicts about which the judge, after weighing the evidence, has no firm conviction." *United States v. Rojo–Alvarez,* 944 F.2d 959, 969 (1st Cir.

1991) (quoting other circuits). Otherwise, "the safeguard would swallow the rule in a single gulp," *United States v. Akitoye*, 923 F.2d 221, 228 (1st Cir.1991), since to take the evidence in the light most favorable to the defendant is to credit his or her testimony. In this case, the trial judge did have a firm, and amply warranted, conviction that perjury had been committed.

We note, in addition, that the quoted commentary *read literally* addresses a rather narrow problem peculiar to perjury and other charges that match a defendant's testimony against "the truth" as later found by the judge or jury. Words, even in context, can be subject to more than one plausible reading; and this is as true in parsing the testimony of a defendant at trial as in construing a statute. In a perjury case, one of the plausible readings may be in conflict with "the truth" and undoubtedly willful if that meaning were intended; the other reading, also plausible but perhaps less so, may render the defendant's statement accurate, or at least make willfulness unlikely.

The precise words of quoted commentary say that in such cases the defendant's "testimony or statement" should be read in the light most favorable to the defendant. To the extent that an innocent reading may be plausible (even though perhaps less plausible than an inculpatory one), the commentary resolves *this* doubt in favor of the defendant. The Sixth Circuit recently put the matter thusly:

> We note that this [commentary] does not require that the evidence *in its entirety* be taken in a light most favorable to the defendant. It is only the defendant's statement that is to be taken in a light most favorable to him. So, if the meaning of the defendant's statement is ambiguous, the ambiguity should be resolved in his favor to prevent a finding of perjury when the defendant's statement, taken another way, would not have been perjurious.

*United States v. Crousore*, 1 F.3d 382, 385 (6th Cir.1993).

■ Here, as in *Crousore*, there is no ambiguity in the meaning of Tracy's statements. We hasten to add that there is also nothing that suggests that the present case was a close one as to either inaccuracy or willfulness. Still less is there any possibility of a mistake, that is, testimony that was not true but was honestly believed to be so when delivered. The color and design of the blotter paper might have involved a possibility of mistake, but Tracy could not have been mistaken about his fear or lack of fear of Wright, or about his motive for going to Florida (putting aside psychological subtleties that are not involved in this case).

■ We conclude by rejecting, and mildly reprimanding, Tracy's claim that a reasonable doubt of perjury existed in the trial judge's own mind. Tracy's brief quotes the trial judge as saying, at the original sentencing, that he was then "not comfortable in its own mind in concluding that the conduct amounts to perjury ..." (sic). Tracy argues that, if the district court had such a doubt about the presence of perjury, then the government could not have met its burden. Apart from the fact that the district court was then talking about a *different* perjurious episode (the fake LSD claim), the argument is undercut by *other words of the judge not* quoted in Tracy's brief.

The full sentence was as follows: "And the Court simply is not comfortable in its own mind in concluding that the conduct amounts to perjury of sufficient significance to justify an enhancement." Reading this full sentence in the context of the two full paragraphs (quoted earlier in this opinion), one would probably conclude that when the district court said that this was a "close call" and said it was "not comfortable in its own mind," it was referring not to the evidence of inaccuracy or willfulness or even materiality but rather to the policy arguments against sanctioning a defendant for testifying at trial in any but the most extreme case.

We were ourselves uncertain enough about the district court's intention to remand, but we do not think that this doubt warranted Tracy's brief in omitting the balance of the sentence it quoted. As it happens, on remand the district judge addressed this very issue, explaining that he had originally given the defendant the benefit of the doubt on the enhancement because "I was very concerned

that, as a matter of policy, imposition of that kind of enhancement might chill other defendants' exercise of their right to testify at trial." Needless to say, the district court's concern is a reasonable one, but *Dunnigan* binds us and the district court alike. Any charge that the district court's original policy doubts and present findings are inconsistent is without basis.

■ Tracy's final claim concerns an amendment to the sentencing guidelines that became effective *after* the district court resentenced Tracy in the remanded proceeding. Effective November 1, 1993, the sentencing guidelines have altered the method for computing LSD in a manner that Tracy's brief claims is favorable to his position and would result in a lower guideline range. U.S.S.G.App. C, Amendment 488. The Sentencing Commission has determined that the amendment applies retroactively. *Id.*, Amendment 502. *See* 28 U.S.C. § 994(u). A sentence imposed before the new computational method can therefore be readjusted by the district court to conform to the amended approach. 18 U.S.C. § 3582(c)(2).

Tracy at the close of his brief asks that we remand the matter to the district court to permit resentencing in accordance with the amendment. Such a recomputation, however, presents issues of fact and may involve other questions about which the government and Tracy differ. The statute providing for retroactive adjustments allows the defendant to file a motion with the district court seeking such an adjustment. 18 U.S.C. § 3582(c)(2). Our affirmance in this case is without prejudice to Tracy's right to do so.

We have a final observation about the government's earlier appeal. It now appears from its position at the remand hearing that the government was satisfied with the sentence originally imposed. Yet as a result of the government's appeal Tracy has now to serve an additional two years over and above the ten years' imprisonment originally imposed. Some portion of the full sentence reflects Tracy's criminal history, and his flight to Florida. But neither a ten nor a twelve-year sentence could be called unduly lenient.

Understandably, the government wished to establish the principle that perjury, and not "something more," merits an enhancement. But this point could have been made as easily in a later case where the government actually wanted a longer sentence. A litigant is not obligated to worry about the price paid by others to establish a matter of principle. Still, one hopes that a prosecuting agency would weigh the price in its own calculus.

*Affirmed.*