57 F.3d 1071
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Mark S. KAHLEY, Defendant-Appellant.
 No. 94-6285.
 United States Court of Appeals, Sixth Circuit.
 May 31, 1995.
 
 Before KENNEDY and SUHRHEINRICH, Circuit Judges, and CHURCHILL, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Mark Kahley appeals his sentence entered pursuant to a guilty plea on a three-count indictment charging him with the intent to distribute and distributing measurable quantities of Lysergic Acid Diethylamide ("LSD") in violation of 21 U.S.C. Sec. 841(a)(1). For the reasons set forth below, we find no errors in the sentence imposed by the district court and AFFIRM.[1]
 
 I.
 
 2
 Kahley initially entered a plea of not guilty on the three-count indictment. On May 5, 1993, pursuant to a written plea agreement ("Agreement"), Kahley entered a plea of guilty to all counts. Under the Agreement, the government agreed to file a motion to depart pursuant to U.S.S.G. Sec. 5K1.1 and 18 U.S.C. Sec. 3553(e) in exchange for Kahley providing substantial assistance. Paragraph 4K of the Agreement stipulates, however, "that the determination of whether such substantial assistance has been provided is solely within the province of the United States." The Agreement also contained an integration clause.
 
 
 3
 On June 1, 1993, the district court issued a bench warrant when Kahley fled the jurisdiction.[2] He was arrested on July 29, 1993, by the Canadian Mounted Police and was extradited to the United States on July 19, 1994. Prior to sentencing, the district court denied Kahley's request for specific performance of the Agreement. Kahley was sentenced on September 28, 1994, to 51 months imprisonment on Count 1 of the indictment and 120 months on Counts 2 and 3, to be served concurrently.[3] This appeal followed.
 
 II.
 
 4
 We review a district court's application of the Sentencing Guidelines de novo, and its supporting factual findings for clear error. United States v. Muhammad, 948 F.2d 1449, 1455 (6th Cir.1991), cert. denied, 502 U.S. 1119 (1992).
 
 A.
 
 5
 Although a decision not to file a Sec. 5K1.1 motion is not insulated from all review, the burden rests with the petitioner to plead and prove that the government's decision not to file a Sec. 5K1.1 motion was the result of a constitutionally suspect motivation. Wade v. United States, 504 U.S. 181 (1992); United States v. Johnson, 46 F.3d 19, 21 (6th Cir.1995). When the government fails to fulfil the terms of a plea agreement, an unsatisfied defendant may seek specific performance. Santobello v. New York, 404 U.S. 257, 262-63 (1971). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello, 404 U.S. at 262.
 
 
 6
 Kahley first contends that under an oral side cooperation agreement with the Kentucky State Police, Trooper Lopez would recommend a five-year sentence to the prosecutor and conceal Kahley's arrest to ensure his safety and ability to cooperate. Kahley cites numerous instances of alleged police misconduct in order to establish blame for his failure to earn a Sec. 5K1.1 reduction.
 
 
 7
 At the rearraignment and plea hearing, the district court made a complete inquiry concerning any agreements that existed and the full text of the agreements. Kahley admitted that the United States Attorney was not a party to the agreement with Trooper Lopez and that the "promise was nothing that the United States would adhere to." (J.A. at 226-27).[4] Based on the evidence, the district court concluded that the written plea agreement presented at the hearing was the entire agreement, and that no other agreements existed.
 
 
 8
 Kahley has presented no evidence that the federal government did not adhere to the Agreement. Based on the evidence before us, we find that the district court correctly concluded that neither the side agreement with Lopez, nor the conduct of the Kentucky police department impacted the Agreement entered by the federal government.
 
 
 9
 Kahley also alleges that the FBI struck an oral side cooperation agreement with him. At the plea hearing, the district court asked whether any other promises were made to him, other than those set out in the Agreement. Kahley did not mention the alleged side agreement with the FBI. Accordingly, Kahley has the burden of establishing that a separate agreement exists. United States v. Herrera, 928 F.2d 769, 773 (6th Cir.1991). The existence of a side agreement is a question of fact and thus subject to a clearly erroneous standard of review. Id.
 
 
 10
 We find that the Agreement between Kahley and the government is clear and unambiguous and completely negates Kahley's belated claim that the FBI offered him an oral agreement with more favorable terms. This conclusion is fortified by the proceedings wherein Kahley changed his plea to one of guilty, and also at his sentencing. The transcript of those two proceedings, along with the integration clause in the Agreement, completely negates the suggestion that the FBI participated in a side agreement. As such, we cannot conclude that the district court's finding that no side agreement existed with the FBI is clearly erroneous.
 
 B.
 
 11
 Kahley also maintains that he is entitled to a three-level downward departure for acceptance of responsibility despite his fugitive status. We review the district court's determination for clear error. United States v. Crousore, 1 F.3d 382, 386 (6th Cir.1993). We afford great deference to the district court's finding because its assessment of a defendant's contrition depends heavily on credibility assessments, namely that "although truthfully admitting guilt is significant acceptance of responsibility, 'this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.' " Id. at 386 (quoting U.S.S.G. Sec. 3E1.1 Commentary n. 3).
 
 
 12
 The district court noted that although Kahley pleaded guilty, his subsequent conduct, fleeing the country to avoid sentencing, belied any acceptance of responsibility. Additionally, when he was apprehended in Canada, he initially attempted to conceal his true identity. The district court found that acceptance was not manifested, consistent with the teachings of Crousore, in light of Kahley's fugitive status, and therefore denied a reduction for acceptance of responsibility. After reviewing the record we cannot say that the district court's conclusion was clearly erroneous.
 
 C.
 
 13
 Kahley also argues that the district court improperly sentenced him to the mandatory minimum sentence on Counts 2 and 3. Section 841(b)(1)(B)(v) mandates a five-year minimum sentence for distributing more than one gram of a "mixture or substance containing a detectable amount" of LSD.[5] The weight of the medium carrier is included for purposes of determining the applicability of the mandatory minimum sentence. Chapman v. United States, 500 U.S. 453, 460-62 (1991). Subsequent to the Chapman decision, U.S.S.G. Sec. 2D1.1 was amended to include a uniform weight per dosage unit of LSD.[6] Kahley argues that the weight of LSD calculated under Sec. 2D1.1 should also be used to determine the applicability of the mandatory minimum sentence. This argument is foreclosed by this court's recent decision in United States v. Andress, 47 F.3d 839, 840-41 (6th Cir.1995) (per curiam).
 
 D.
 
 14
 We also note that Kahley cannot contest the district court's refusal to grant a downward departure pursuant to U.S.S.G. Sec. 5K2.0. A district court's refusal to depart downward for a sentence within the properly computed guideline range is not a cognizable basis for appeal. United States v. Isom, 992 F.2d 91, 94 (6th Cir.1993). Here, the district court properly computed Kahley's guideline range and thus the court's refusal to depart is not appealable.[7] Thus, Kahley's challenge lacks merit.
 
 III.
 
 15
 For the reasons stated above, we AFFIRM the sentence imposed by the district court.
 
 
 
 *
 The Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Defendant also asks this court to reverse a published decision of another panel: United States v. Bagnoli, 7 F.3d 90 (6th Cir.1993), cert. denied, 115 S.Ct. 95 (1994). This court does not have such power. United States v. Sonagere, 30 F.3d 51, 54 (6th Cir.), cert. denied, 115 S.Ct. 531 (1994)
 
 
 [2]
 In his May 14, 1993 letter to the district court, Kahley stated "Because I do not agree with the unjust punishments for my crime, I've taken it upon myself to become a fugitive."
 
 
 [3]
 Counts 2 and 3 carry mandatory minimum sentences of ten years. 21 U.S.C. Sec. 841(a)(1)
 
 
 [4]
 Kahley also acknowledges that his attorney had explained that Lopez's promise was a "police matter[ ] & that the prosecutor would not include them in the plea agreement...." (J.A. at 202.)
 
 
 [5]
 21 U.S.C. Sec. 841(b)(1)(B)(v)
 
 
 [6]
 See Amendment 488 to U.S.S.G. Sec. 2D1.1 (effective Nov. 1993)
 
 
 [7]
 Moreover, a statutorily mandated minimum sentence cannot be reduced by a sentencing guidelines provision. United States v. Goff, 6 F.3d 363, 366-67 (6th Cir.1993)