57 F.3d 1071
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory HARDY, Defendant-Appellant.
 No. 93-6635.
 United States Court of Appeals, Sixth Circuit.
 June 5, 1995.
 
 Before: NORRIS and SILER, Circuit Judges; and NEWBLATT, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Gregory Hardy challenges the sufficiency of the evidence on one count of conspiracy to distribute cocaine, 21 U.S.C. Sec. 846. He also challenges the district court's enhancement of his sentence for obstruction of justice and defendant's role as manager, organizer or supervisor of the conspiracy.
 
 
 2
 For the reasons stated herein, we affirm defendant's conviction and sentence.
 
 I.
 
 3
 Hardy, a resident of Nashville, Tennessee, visited his friend, Randall Briggins, in Los Angeles. While in Los Angeles, Briggins introduced Hardy to Kevin Lee Kim at Kim's house. At Hardy's request, Kim introduced Hardy to a drug dealer named Oscar. According to Kim, Hardy directly transacted with Oscar for eight kilos of cocaine and agreed to pay Kim a commission for the connection.
 
 
 4
 After purchasing the cocaine, Hardy brought it back to Kim's house. Kim and Hardy then loaded the cocaine into a car to be driven by Russell Gagliano, an acquaintance of Kim. Hardy, John K. Johnson, Kim and Briggins were present at Kim's house when Gagliano prepared to leave for Nashville. Hardy gave Gagliano directions and provided him two Nashville phone numbers, one for a pager used by Hardy and the other for the residence of Hardy's girlfriend, Tammy Hawkins.[2]
 
 
 5
 Gagliano drove as far as Memphis when police officers stopped him and found the cocaine. The police advised Gagliano to drive the car to Nashville and go through with the drug deal. Upon his arrival, Gagliano telephoned the pager number. A woman answered and said she had not seen Greg in several days. Gagliano then called the portable phone number of Johnson. Kim answered and instructed Gagliano to get a hotel room. Meanwhile, Kim, Hardy, Briggins and Johnson purchased plane tickets to Phoenix, Arizona under assumed names. When the plane landed in Phoenix, however, the men stayed aboard to continue on the flight to Nashville. All five men met in a hotel room in Nashville. Soon after that, police arrested Hardy and the others. Following his arrest, Hardy gave police a California driver's license in a false name. His actual identity was not discovered until two months later.
 
 
 6
 Hardy was indicted on one count of conspiracy to possess cocaine with intent to distribute and one substantive count of cocaine distribution. He was convicted of conspiracy and acquitted on the distribution charge. The district court computed his base offense level to be 32. It then enhanced the sentence by four levels: two for obstruction of justice, on the basis that Hardy perjured himself when he testified at trial, USSG Sec. 3C1.1; and two for Hardy's role as organizer, manager or supervisor of the conspiracy, USSG Sec. 3B1.1. Hardy received a sentence of 292 months, which was at the bottom of the range for a total offense level of 36 with his criminal history of V.
 
 II.
 
 7
 A) Sufficiency of the Evidence.
 
 
 8
 While Hardy moved for judgment of acquittal at the close of the government's case-in-chief, he failed to renew his motion at the close of all the evidence. This failure constitutes a waiver of his present sufficiency of the evidence challenge. United States v. Dandy, 998 F.2d 1344, 1356 (6th Cir. 1993), cert. denied, 114 S.Ct. 1188 (1994); United States v. Williams, 940 F.2d 176, 180 (6th Cir.), cert. denied, 112 S.Ct. 666 (1991). This failure precludes this court's review of the issue "[a]bsent a showing of a manifest miscarriage of justice ...." Williams, 940 F.2d at 180. Upon reviewing the record, we conclude that defendant's conviction was not a result of a miscarriage of justice. Not only was there sufficient evidence to submit the case to the jury, but defendant can point to no instance of error sufficient to manifest a miscarriage of justice. For this reason, defendant's challenge to his conviction is without merit.
 
 
 9
 B) Sentence.
 
 
 10
 A district court can increase a defendant's sentence by two levels pursuant to Sec. 3C1.1 when the court finds that the defendant made a materially false statement during the investigation, prosecution, or sentencing of an offense. United States v. Crousore, 1 F.3d 382, 384 (6th Cir. 993). This enhancement usually applies in a situation of perjury. The term "perjury" signifies the giving of "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." United States v. Dunnigan, 113 S.Ct. 1111, 1117 (1993). A statement is material when it is such that "if believed, would tend to influence or affect the issue under determination." Crousore, 1 F.3d at 385. The facts supporting an enhancement under Sec. 3C1.1 for perjurious testimony must be proven by a preponderance of the evidence. United States v. Hoffman, 982 F.2d 187, 191 (6th Cir. 1992). This court, however, reviews the district court's finding only for clear error, id.; that is, when the "'decision [strikes the court] more than just maybe or probably wrong; it must ... strike us as wrong with the force of a five-week-old, unrefrigerated dead fish."' United States v. Phibbs, 999 F.2d 1053, 1075 (6th Cir. 1993)(citations omitted), cert. denied, 114 S.Ct. 1071 (1994).
 
 
 11
 The district court applied an enhancement to Hardy's sentence after it determined that Hardy testified falsely on the stand. This was not error. As the district court correctly noted, the preponderance of the evidence indicated that defendant was aware of the drug conspiracy (i.e., Briggins's testimony that Hardy knew drugs were in the car; the use of assumed names for the airline tickets and at the time of arrest; Hardy's decision to stay aboard the flight; the use of the pager number). In light of this evidence, we find that the district court was justified in concluding that defendant perjured himself when he claimed that he "knew nothing" about the conspiracy or the existence of drugs. The number of witnesses that contradicted Hardy's testimony on this point alone justifies the enhancement. Dunnigan, 113 S.Ct. at 1117.
 
 
 12
 Hardy's claim that this enhancement impeded his constitutional right to testify on his own behalf is also without merit. As the Supreme Court stated in Dunnigan, while a defendant has the right to testify, he does not have the right to commit perjury. Id.
 
 
 13
 In regard to the role in the offense enhancement, Sec. 3B1.1 provides that a court may increase a defendant's sentence by two levels "if the defendant was an organizer, leader, manager, or supervisor in any criminal activity ...." USSG Sec. 3B1.1. Hardy argues that the district court's imposition of this enhancement to his base offense level was unwarranted as Kim was the sole organizer and supervisor of the conspiracy. Similar to the obstruction of justice enhancement, a district court's decision regarding the defendant's role in the offense is a finding of fact which this court will overturn only when it appears to be clearly erroneous. Phibbs, 999 F.2d at 1075.
 
 
 14
 The district court did not commit clear error. A preponderance of the evidence proved that defendant played an important organizational role in bringing the Los Angeles cocaine trade into Nashville. For instance, Kim testified that Hardy asked him to help him find a drug supplier. Hardy also directly purchased the cocaine from Oscar, not Kim. Finally, it appears that Hardy was the "Nashville connection": his pager number was one of the numbers Gagliano was to call when he arrived in Nashville and he was the expected recipient of the cocaine.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The Honorable Stewart Newblatt, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 Gagliano wrote this information on a piece of paper that was later introduced into evidence. The paper contained the directions and the phone numbers with the name "Greg" above the numbers